IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIRK D. ROBINSON,<br><br>        Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA; NEBRASKA DEPARTMENT OF CORRECTIONS; RUSSELL VANLENGEN; KEVIN KLIPPERT, UM; KURT WEES, Unit Admin.; and OMAHA CORRECTION CENTER MEDICAL CLINIC,<br><br>        Defendants. | **8:22CV151**<br><br>**MEMORANDUM AND ORDER** |

    Plaintiff, who is currently incarcerated at the Omaha Correctional Center ("OCC"), brings this 42 U.S.C. § 1983 action for money damages. The court now conducts an initial review of the Complaint (Filings 1 & 8) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

## I. SUMMARY OF COMPLAINT

    Plaintiff, an inmate at the OCC, first complains that it took four months (from November 1, 2021, to March 3, 2022) to be examined, tested, and treated with an A-PAP machine for obstructive sleep apnea.

    Next, Plaintiff alleges that it took five months (from November or December 2021 to April 11, 2022) for the OCC staff to move him to another cell after Plaintiff complained both verbally and in writing to Defendants Vanlengen and Klippert that his cellmates were becoming "agitated" due to his snoring, "tensions were mounting," they threatened and insulted Plaintiff, and they threw things at him when

he was sleeping. In January or February of 2022, Plaintiff filed an "emergency grievance" stating that his cellmate had thrown something at him while he was sleeping and requesting to be moved to a different unit. Defendant Vanlengen allegedly told Plaintiff "he did not consider it life threatening and that it was not an emergency." (Filing 1 at CM/ECF p. 6.) Plaintiff claims Defendants Klippert and Vanlengen told Plaintiff to tell his annoyed cellmates, "Welcome to prison." (*Id.*).

On February 10, 2022, one of Plaintiff's cellmates attacked him due to Plaintiff's snoring, resulting in a black eye and a cut below his eye. Plaintiff was immediately given medical treatment, photographs were taken of his injuries, a misconduct report was filed against the cellmate, and the cellmate was punished. Plaintiff alleges that while he was receiving medical care, his cellmates stole his property. Plaintiff informed a case worker and Defendant Klippert of the theft and asked to be moved to another cell. Plaintiff claims his request was denied, and his theft claims were not investigated. (Filing 8.)

On February 23, 2022, and after receiving what Plaintiff perceived to be a threatening statement from a cellmate, Plaintiff filed an "emergency grievance" complaining about the time it was taking to deal with his sleep-apnea problem and the fact that he was physically assaulted on February 10, 2022, "over the snoring situation" and "[n]ow another inmate is pressuring me over it." (Filing 1 at CM/ECF p. 18.) He was taken to unit manager Vanlengen's office the next day, where Plaintiff alleges that Vanlengen refused to move him to another unit (Filing 8), but did offer to move him into protective custody immediately. Plaintiff refused because he thought he would be required to move to another institution if he chose protective custody. Plaintiff signed an Inmate Refusal of Protective Custody. Vanlengen responded to Plaintiff's "emergency grievance" in writing on February 24, 2022, warning him that if he felt threatened or fearful, he should notify staff immediately instead of submitting what Plaintiff labeled as an "emergency grievance" via institutional mail. (*Id.*)

Plaintiff then began communicating with Defendant Wees, who was the unit administrator. Plaintiff filed five "IIR's," three of which went unanswered. Plaintiff filed a Step-Two Grievance on March 24, 2022, that stated in part:

> On February 10, 2022, I was assaulted by another inmate. Several factors led to this, none of which were my fault. Unit staff behavior and lack of help, medical's inability to complete the process in a timely manner, the overcrowding of the prison system, etc. . . , all led to an unsafe situation that [led] to the attack on me that resulted in physical, emotional, and mental injuries.

(Filing 1 at CM/ECF p. 16.) OCC staff advised Plaintiff on March 9, 2022, that his request to move "was in the process of being accommodated however available space/suitable placement would take time." (Filing 1 at CM/ECF p. 19.) Plaintiff was also informed that he "would need to be patient due to the facility being at capacity and the need to find a compatible cell." (Filing 1 at CM/ECF p. 8.) Plaintiff filed what he labeled as a "grievance of a sensitive nature" on April 6, 2022 (Filing 1 at CM/ECF pp. 19-20), which recapped his annoyance about the slow process of treating his sleep apnea and the "verbal and physical abuse" and "dangerous living conditions" he was enduring. He was moved to another cell on April 11, 2022.

Finally, Plaintiff complains that the State of Nebraska has "created a dangerous situation by letting [the] prison system become overcrowded to the point that an inmate cannot be moved out of a situation because there is not a place for them to go." (Filing 1 at CM/ECF p. 11.) Plaintiff also asserts that he was placed in danger because the cellmate who attacked him had served multiple sentences in prison and had a history of violence against other inmates, yet he was housed with Plaintiff in general population.

Plaintiff requests $2.5 million in damages for physical and mental injury.

3

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION

### A. Proper Defendants & Capacity

Plaintiff brings this suit under 42 U.S.C. § 1983. A suit may be brought under section 1983 only against a "person" who acted under color of state law. Generally, a state, its agencies and instrumentalities, and its employees in their official

4

capacities are not a "'person[s]' as that term is used in § 1983, and [are] not suable under the statute, regardless of the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 201 (1991). *See also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983).

Moreover, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacities. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Egerdahl*, 72 F.3d at 619; *Dover Elevator Co.*, 64 F.3d at 446-47; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). There is no evidence of such a waiver or override of immunity here.

Finally, a correctional institution or its departments are not entities subject to suit under section 1983. *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (unpublished) (county jail was not suable entity under section 1983); *Dingman v. Barron*, No. 5:13-CV-05117, 2014 WL 584757, at *2 (W.D. Ark. Feb. 13, 2014) (jail is a building and not a person or legal entity subject to suit under section 1983).

Therefore, Plaintiff cannot state section 1983 claims for money damages against Defendants State of Nebraska; Nebraska Department of Corrections; Omaha Correction Center Medical Clinic; and Defendants Russell Vanlengen, Kevin Klippert, and Kurt Wees in their official capacities, and these parties must be dismissed.

Because Plaintiff fails to specify the capacity in which Defendants Vanlengen, Klippert, and Wees are sued, the court must assume they are sued only in their

official capacities, which is another way of suing their employer, the State of Nebraska. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. Absent such an express statement, the suit is construed as being against the defendants in their official capacity. A suit against a public employee in his or her official capacity is merely a suit against the public employer." (internal citations omitted)); *Olona v. NDCS*, No. 8:20CV171, 2020 WL 6318872, at *2 (D. Neb. Oct. 28, 2020) (Eleventh Amendment barred claims for damages against employees of Omaha Community Corrections Center in official capacities, who were considered state employees); *Reising v. Lewien*, No. 8:18CV352, 2019 WL 1585142, at *3 (D. Neb. Apr. 12, 2019) (1983 suit for money damages against unit administrator of Omaha Community Corrections Center and warden of Omaha Correctional Center in official capacities barred by Eleventh Amendment).

The court will give Plaintiff leave to amend his Complaint to assert claims against suable defendants, including OCC employees in their individual capacities. However, Plaintiff should note that "'[t]o prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation.'" *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009). Further, if Plaintiff desires to assert such claims, he should keep in mind the applicable law, set forth below.

## B. Deliberate Indifference to Serious Medical Needs

"It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." *Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a deliberate-indifference claim, Plaintiff must show that (1) he suffered from an objectively serious medical need, and (2) the Defendants knew of the need, yet deliberately disregarded it. *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019).

"A medical need is objectively serious if it is supported by medical evidence, such as a physician's diagnosis, or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016) (quoting *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009)). Deliberate indifference requires a showing that the defendant "'had actual knowledge of that need but deliberately disregarded it.'" *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Bailey*, 810 F.3d at 594). "[W]hile inmates have a right to adequate medical care, they have no 'right to receive a particular or requested course of treatment.'" *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). In other words, "'[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.'" *Id.* at 921-22 (quoting *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007)).

Here, Plaintiff complains about the delay in getting a sleep test and an A-PAP machine to treat his sleep apnea and that such delay caused him to be attacked by his roommate, who was irritated by Plaintiff's snoring. "A delay in treating a serious medical need can constitute deliberate indifference." *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). When a deliberate-indifference claim is based on such a delay, the court measures "the objective seriousness of the deprivation . . . by reference to the *effect* of delay in treatment. To establish this effect, the inmate must

7

place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (internal quotation marks and citations omitted). Specifically, the prisoner "must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation marks and citations omitted).

As currently drafted—and assuming for purposes of discussion that Plaintiff has sued the proper Defendants[1] in their individual capacities—Plaintiff's Complaint does not allege that the delay in treatment adversely affected his *medical prognosis*, but asserts only that his roommate became irritated with his symptoms (snoring), causing his roommate to physically retaliate against Plaintiff. Further, there are no allegations that the Defendants deliberately disregarded Plaintiff's condition; rather, Plaintiff's allegations indicate that the Defendants successfully diagnosed and remedied Plaintiff's sleep apnea, albeit not as speedily as Plaintiff wished. This is not enough to state a deliberate-indifference claim. *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009) ("Under the Constitution, . . . the range of acceptable medical care is broad. . . . The Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish."); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) ("Although the prison doctors may not have proceeded . . . as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner.").

---

[1] Plaintiff's Complaint does not clearly indicate which, if any, Defendants were medical or administrative personnel who were personally involved in the alleged delay in testing, diagnosing, and treating Plaintiff. "To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

8

## C. Delay in Moving Plaintiff

Plaintiff complains that it took five months (from November or December 2021 to April 11, 2022) for the OCC staff to move him to another cell after Plaintiff complained both verbally and in writing to Defendants Vanlengen, Klippert, and Wees that his cellmates were becoming agitated and threatening due to Plaintiff's snoring. "A prison official may be held liable under the Eighth Amendment if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Walton v. Dawson*, 752 F.3d 1109, 1119-20 (8th Cir. 2014) ("Detainees are most vulnerable when asleep, and the Constitution guarantees a minimum right to sleep without legitimate fear of a nighttime assault by another detainee.") (internal quotation marks and citation omitted); *Allen v. Mills*, No. 1:16-CV-26, 2016 WL 6636807, at *4 (E.D. Mo. Nov. 9, 2016) (allegations that prison officials left a prisoner-plaintiff in a cell "despite knowing [his cellmate] had threatened to harm him state claims under the Eighth Amendment"); *but see Baalim v. St. Louis City Just. Ctr.*, No. 4:22-CV-359, 2022 WL 2237335, at *10 (E.D. Mo. June 22, 2022) (pro se prisoner case dismissed for failure to state claim under 28 U.S.C. § 1915(e)(2)(B), partly because prisoners have no constitutional right to their choice of cell; "[t]ransfer within the prison, or to another prison, is within the discretion of prison officials" (internal quotation marks and citation omitted)); *Braun v. Hanson*, No. 18-CV-3355, 2020 WL 1496580, at *8 (D. Minn. Jan. 27, 2020), *report and recommendation adopted,* No. 18-CV-3355, 2020 WL 1493884 (D. Minn. Mar. 27, 2020) ("A prisoner enjoys no constitutional right to a particular place of confinement. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993). Prisoners do not have the right to their choice of cells; transfers within a prison and to other prisons are within the discretion of prison officials.").

If Plaintiff sues Defendants Vanlengen, Klippert, and Wees in their individual capacities in an amended complaint, and assuming that such Defendants are alleged to have had some power over Plaintiff's cell assignment, this section 1983 claim could go forward under the Eighth Amendment because Plaintiff alleges that his

cellmates threatened him, he alerted Defendants Vanlengen, Klippert, and Wees of the potential danger, his cellmates carried through with their threats by assaulting him, and it took several months before Plaintiff was moved to a different cell. While Plaintiff's allegations suggest that OCC staff was steadily working on moving him (and indeed offered him immediate placement in protective custody) during the delay, Plaintiff hints that their efforts were not reasonable. Construed very liberally, and for purposes of initial review only, these allegations would be enough to state an Eighth Amendment claim against those who allegedly knew that Plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable measures to abate it. *Walton*, 752 F.3d at 1119-20.

### D. Overcrowding Causing Risk to Plaintiff

Plaintiff complains that the State of Nebraska "created a dangerous situation by letting [the] prison system become overcrowded to the point that an inmate cannot be moved out of a situation because there is not a place for them to go" (Filing 1 at CM/ECF p. 11) and incompatible cellmates must be placed in the same cell.

When prison overcrowding leads to deprivations of essential food, medical care, sanitation, increased violence among inmates, or other intolerable prison conditions, an Eighth Amendment claim may exist. *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991). However, to successfully state a section 1983 claim, Plaintiff must show each individual Defendant's personal involvement in the alleged violation. *Kingsley v. Lawrence Cnty., Missouri*, 964 F.3d 690, 700 (8th Cir. 2020). As currently drafted, Plaintiff's Complaint asserts this claim only against the State of Nebraska, which has been dismissed from this action. Plaintiff makes no allegations that Defendants Vanlengen, Klippert, and Wees have any involvement in creating, maintaining, increasing—or at all affecting—the level of overcrowding at the OCC or responsibility for making cell assignments and transfers for Plaintiff and his cellmates. To be successful in stating an Eighth Amendment claim against Defendants Vanlengen, Klippert, and Wees in their individual capacities that overcrowding created a risk of danger to Plaintiff, he will need to allege—if he can

truthfully do so—that the individual Defendants were personally involved in creating the overcrowding at the OCC, thereby causing a delay in Plaintiff's move to another cell and the violence visited upon him by his incompatible cellmate.

### E. Cellmates Stealing Plaintiff's Property

Plaintiff alleges in his Motion to Amend (Filing 8) that his cellmates stole his property while he was out of the cell receiving medical care, and Defendant Klippert ignored the theft and did not investigate it. This is not an actionable claim under 42 U.S.C. § 1983 because Plaintiff could seek redress in Nebraska state courts for his claim of stolen property. *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) ("When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." (internal quotation marks and citations omitted)); *Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under state law); *Pittman v. Thurston*, No. 6:22-CV-06049, 2022 WL 2446244, at *3 (W.D. Ark. June 22, 2022), *report and recommendation adopted,* No. 6:22-CV-06049, 2022 WL 2442789 (W.D. Ark. July 5, 2022) ("Because Plaintiff may seek redress in Arkansas state courts for his claim of lost property, he has no claim pursuant to § 1983"); *Zelenka v. Pratte*, 912 N.W.2d 723, 728 (Neb. 2018) (elements of replevin claim under Nebraska law); *Brook Valley Ltd. P'ship v. Mut. of Omaha Bank*, 285 Neb. 157, 164, 825 N.W.2d 779, 787 (2013) (elements of conversion under Nebraska law).

### IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief may be granted, and is subject to immediate dismissal under 28 U.S.C. § 1915A. However, the court on its own motion will give Plaintiff 30 days in which to file an amended complaint.

If an amended complaint is not filed within 30 days, this action will be dismissed without further notice.

IT IS THEREFORE ORDERED:

1. Plaintiff's Motion to Amend (Filing 8) is granted and has been construed as a Supplement to Plaintiff's original Complaint. The allegations contained therein have been incorporated into the court's initial review of Plaintiff's Complaint (Filing 1).

2. Plaintiff's purported 42 U.S.C. § 1983 claims for money damages against Defendants State of Nebraska; Nebraska Department of Corrections; Omaha Correction Center Medical Clinic; and Defendants Russell Vanlengen, Kevin Klippert, and Kurt Wees in their official capacities are dismissed for failure to state a claim upon which relief can be granted.

3. Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sets forth a viable claim against a proper defendant who was *personally involved* in alleged constitutional violations against Plaintiff. If Plaintiff fails to file an amended complaint, or the court finds that the amended complaint is insufficient, this matter will be dismissed without further notice for failure to state a claim upon which relief may be granted. In his amended complaint, Plaintiff must identify each defendant by name, state the capacity in which he or she is sued, and set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant. Plaintiff should be mindful to explain in his amended complaint what each defendant did to him, when the defendant did it, and how the defendant's actions harmed him.

4. In the event Plaintiff files an amended complaint, Plaintiff shall restate the allegations of his original Complaint (Filings 1 & 8) and any new allegations. Failure to consolidate all claims ***into one document*** may result in the abandonment

of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

5.     The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A in the event he files an amended complaint.

6.     The Clerk of the Court is directed to set the following pro se case management deadline: October 7, 2022—amended complaint due.

7.     Plaintiff's Motion for Summons and Praecipe for Service (Filing 10) is denied as premature, as the court has not yet decided that service of process should occur. That decision will be made after initial review of Plaintiff's amended complaint.

DATED this 7th day of September, 2022.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

13