IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KIRK D. ROBINSON,<br><br>                            Plaintiff,<br><br>          vs.<br><br>RUSSELL     VANLENGEN,     KEVIN<br>KLIPPERT, UM; BARB LEWIEN, Warden;<br>TOM  DAVIS,  Unit  Manager;  SHAWN<br>FREESE,  Deputy  Warden;  CONNOR<br>LARSON,     Major;       BENNETT,    Lt.;<br>REYNOLDS,  Cpt.;  PETE  RICKETTS,<br>Governor; JULIE SLAMA, State Legislator;<br>SUZANNE GEIST, State Legislator;   ALL<br>MEDICAL STAFF, Names not known at this<br>time - those who worked from 11/22/2022 to<br>11/24/2022;  and   ALL MENTAL HEALTH<br>STAFF,  that  worked  from  11/22/2022 -<br>names not known at this time;<br><br>                            Defendants. | **8:22CV151**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court upon review of Plaintiff's Amended Complaint, Filing No. 23, and his pending motions to add defendants, to amend his complaint, for review of his case, and for status, Filing Nos. 22, 25, 28, 29, 30, 31, 32, 33, 36. For the reasons explained below, Plaintiff has alleged a plausible claim for relief, but the Court shall give Plaintiff leave to file a second amended complaint to correct deficiencies in other potentially plausible claims raised in the Amended Complaint before this matter proceeds to service of process.

## I.  BACKGROUND

Plaintiff is an inmate currently confined in the Reception and Treatment Center ("RTC") in Lincoln, Nebraska.  *See* Filing No. 23 at 16.  Plaintiff filed the Complaint, Filing

No. 1, in this case on April 18, 2022, when he was confined in the Omaha Correctional Center ("OCC").  Plaintiff sought damages pursuant to 42 U.S.C. § 1983 against the State of Nebraska, the Nebraska Department of Corrections (hereinafter the "Nebraska Department of Correctional Services" or "NDCS"), the Omaha Correction Center Medical Clinic, and three OCC staff members—Russell Vanlengen, Kevin Klippert, and Kurt Wees—for alleged Eighth Amendment violations based on the delay Plaintiff experienced in getting proper treatment for his sleep apnea, the delay in moving Plaintiff to a different cell after he reported his cellmates were threatening him due to Plaintiff's snoring and Plaintiff was attacked by his cellmate, and prison overcrowding creating a risk of harm to Plaintiff.

The Court conducted an initial review of Plaintiff's Complaint on September 7, 2022.  Filing No. 11.  The Court determined that Plaintiff could not state a § 1983 claim for money damages against the State of Nebraska, NDCS, the Omaha Correction Center Medical Clinic, or Defendants Vanlengen, Klippert, and Wees in their official capacities. Because Plaintiff failed to specify in what capacity Defendants Vanlengen, Klippert, and Wees were sued, the Court presumed they were sued in their official capacity only. However, the Court gave Plaintiff "leave to amend his Complaint to assert claims against suable defendants, including OCC employees in their individual capacities."  *Id.* at 6.

After the Court granted Plaintiff's requests for extensions of time, *see* Filing No. 14; Filing No. 19, Plaintiff filed his Amended Complaint on January 3, 2023.  Filing No. 23.  Along with his Amended Complaint, Plaintiff filed correspondence which the Court docketed as a motion in which he requests to add three individuals as defendants.  Filing No. 22.  Plaintiff subsequently filed three Motions to Amend his Amended Complaint,

which the Court construes as motions to supplement his Amended Complaint.  Filing No. 25; Filing No. 29; Filing No. 32.  The Court will address these motions related to Plaintiff's Amended Complaint before proceeding with its review.

## II.  MOTIONS TO AMEND OR SUPPLEMENT AMENDED COMPLAINT

### A.  Filing No. 22

When he filed his Amended Complaint, Plaintiff also submitted correspondence in which he requested to add "Cpl. Sara Karas, Sgt. Black, and Lt. Hayes as defendants to this case . . . in their individual capacities."  Filing No. 22.  While Karas, Black, and Hayes are not listed in the caption of the Amended Complaint, Filing No. 23 at 1, claims are asserted against them in the body of the Complaint, *Id.* at 17.  Upon consideration, Plaintiff's correspondence, treated as a motion, is granted.  *See Miller v. Hedrick*, 140 Fed. App'x 640, 641 (8th Cir. 2005) (citing *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.")). For purposes of this initial review, the Court will consider Cpl. Sara Karas, Sgt. Black, and Lt. Hayes as defendants to the Amended Complaint.

### B.  Filing No. 25

On March 9, 2023, Plaintiff filed a Motion to Amend asking to add the following "[t]o the list of Defendants: . . . Any and all members of the CVORT team, names not known and are not provided to inmates, and all persons who do STRONG-R evaluations, names not known and not provided to inmates."  Filing No. 25 at 1.  Plaintiff alleges "[t]hese people have added programming to the Plaintiff's record that is required to be completed before parole would be grant[ed]" and, because Plaintiff's programming requirements

were only recently changed shortly before his first scheduled meeting with Nebraska's parole board, Plaintiff's "chance of getting paroled, however small that may be, is actually zero because he won't be able to complete this programming" before his parole board meeting. *Id.* at 1–2. Plaintiff claims these actions constitute "deliberate indifference" and "retaliation and retribution" for his numerous grievances and legal actions against NDCS. *Id.* at 2.

Federal Rule of Civil Procedure 20 states that multiple defendants may be joined in the same action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or *arising out of the same transaction, occurrence, or series of transactions or occurrences.*" Fed. R. Civ. P. 20(a)(2)(A) (emphasis added). In addition, there must be a "question of law or fact common to all defendants" in the action. Fed. R. Civ. P. 20(a)(2)(B).

Here, the defendants and claims Plaintiff seeks to add to this action in Filing No. 25 do not arise out of the same transaction, occurrence, or series of transactions or occurrences at issue in the Amended Complaint, all of which relate to Plaintiff's incarceration at the OCC. Accordingly, the Court will deny Plaintiff's Motion to Amend in Filing No. 25 as the defendants and claims are not properly joined in this action. If Plaintiff wishes to pursue the claims raised in Filing No. 25, he must do so by filing a separate civil action and he will be required to pay a separate filing fee for any separate action he files.

## C. Filing No. 29

Plaintiff filed a second Motion to Amend on June 1, 2023. Filing No. 29. Plaintiff seeks to add the Nebraska Association of County Attorneys and all members of the

4

Nebraska Parole Board, including Rosylyn Cotton, as defendants in this matter, claiming "the additional defendants, along with former Governor Ricketts, former state senator Suzanne Geist, and state senator Julie Slama," who are named as defendants in the Amended Complaint, "contributed to the overcrowding emergency in the [NDCS]." *Id.* at 1.

Upon consideration, the Court will grant Plaintiff's motion in Filing No. 29 and will consider the motion as a supplement to the Amended Complaint. *See* NECivR 15.1(b).

**D.   Filing No. 32**

In Plaintiff's third Motion to Amend, Filing No. 32, filed on June 5, 2023, Plaintiff seeks to add a claim of deliberate indifference to his medical needs against various NDCS medical and corrections staff arising out of an incident on May 26, 2023, where Plaintiff was taken to the emergency room with dual pulmonary embolism.  Plaintiff seeks to add to the list of defendants "any and all medical staff that originally diagnosed him with A-fib [approximately two or more months before the May 26, 2023 incident] or ignored his concerns," as well as Case Worker Patak, Unit Manager Gerdes, Case Worker Sibert, the Case Manager working on the morning of 5/26/23 in unit A at RTC for basically ignoring his requests for help or delaying help for several hours" and "for allowing inmates to rob [Plaintiff] of over $500 in property" while Plaintiff was receiving medical treatment. *Id.* at 3.

As with Plaintiff's first Motion to Amend discussed above, the defendants and claims Plaintiff seeks to add to this action in Filing No. 32 do not arise out of the same transaction, occurrence, or series of transactions or occurrences at issue in the Amended Complaint.  The claims and defendants Plaintiff seeks to add in Filing No. 32 clearly relate

5

to Plaintiff's incarceration at the RTC, while the claims and defendants in the Amended Complaint relate to Plaintiff's incarceration at the OCC.  Accordingly, the Court will deny Plaintiff's Motion to Amend in Filing No. 32 as the defendants and claims are not properly joined in this action.  If Plaintiff wishes to pursue the claims raised in Filing No. 32, he must do so by filing a separate civil action and, again, he will be required to pay a separate filing fee for any separate action he files.

### III.  APPLICABLE STANDARDS ON INITIAL REVIEW

The Court now conducts a review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A, which requires the Court to review prisoner complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting

*Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties."  *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988);  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## IV.  SUMMARY OF AMENDED COMPLAINT

As an initial matter, Plaintiff prefaces his Amended Complaint with a request that "the Court allow him to use his previous timeline of events with the addition of this timeline" in his Amended Complaint and also asks the Court "grant him the ability to use any of the previous filing in the future if allowed to continue."  Filing No. 23 at 2.  In granting Plaintiff leave to amend his Complaint, the Court directed Plaintiff to "restate the allegations of his original Complaint (Filings 1 & 8) and any new allegations.  Failure to consolidate all claims **into one document** may result in the abandonment of claims.  Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings."  Filing No. 11 at 12–13 (emphasis in original).  Plaintiff indicates that he was not able to comply with the Court's directive "due to the severe restriction on his access to legal services."  Filing No. 23 at 2 (referring to Case No. 8:22CV398 in which Plaintiff raised an Equal Protection class-of-one claim regarding the OCC library restrictions imposed upon him).

7

Under the circumstances and in the interests of justice, the Court will consider the Amended Complaint as supplemental to the original Complaint, Filing No. 1; Filing No. 8, for purposes of this initial review.  *See* NECivR 15.1(b) (Court may consider pro se litigants' amended pleadings as supplemental to, rather than as superseding, the original pleading).  The Court incorporates its summary of the original Complaint as set forth in its September 7, 2022 Memorandum and Order on initial review (hereinafter "Initial Review Order") and will not repeat the summary here.  Filing No. 11 at 1–3.

Plaintiff's Amended Complaint consists of a seventeen-page handwritten pleading, which sets forth a timeline of events from August 2022 to December 2022, and approximately 176 pages of supporting documents attached to the Amended Complaint. Filing No. 23; Filing No. 23-1.  Plaintiff names three of the same Defendants as in his original Complaint, albeit with some amended spellings of their names: Unit Administrator Curt Weese,[1] Unit Manager Kevin Klippert, and Case Manager Russell Van Langen. Plaintiff also names the following parties as defendants: Warden Barb Lewien, Unit Manager Tom Davis, Deputy Warden Shawn Freese, Major Connor Larson, Lt. Bennett, Cpl. Reynolds, Cpl. Sara Karas, Sgt. Black, Lt. Hayes, Cpl. Vater, Cpl. Cass, and "others whose names are not known" who were working on December 10 and 11, 2022,[2] "All Medical Staff, Names Not Known at this time – those who worked from 11/22/22 to 11/24/22" (hereinafter "OCC Medical Staff"), "All Mental Health staff that worked from

---

[1] Due to the difference in spelling, the Clerk of Court terminated party "Kurt Wees (Unit Admin.)" as a defendant upon the filing of the Amended Complaint but failed to add "Unit Administrator Curt Weese" as a defendant.  The Court will direct the Clerk of Court to correct the caption accordingly.

[2] Plaintiff did not list Cpl. Vater, Cpl. Cass, and others whose names are not known" who were working on December 10 and 11, 2022, in the caption of the Amended Complaint or in his separate motion adding Defendants Karas, Black, and Hayes.  *See* Filing No. 22; Filing No. 23 at 1.  However, Plaintiff asked in the body of the Amended Complaint to include Vater, Cass, and the other unknown staff working on December 10 and 11, 2022, as defendants so the Court has included them here.  *See* Filing No. 23 at 17.

11/22/22 – Names not known at this time" (hereinafter "OCC Mental Health Staff"), Governor Pete Ricketts, State Legislator Julie Slama, State Legislator Suzanne Geist, the Nebraska Association of County Attorneys ("NACA"), and Rosylyn Cotton and all members of the Nebraska Parole Board. Filing No. 23 at 1, 17; Filing No. 22; Filing No. 29. All of the defendants named in the Amended Complaint, including those named in Filing No. 22 and Filing No. 29, will be referred to collectively as "Defendants." Unless otherwise noted, individual defendants will be referred to by their last names.

Plaintiff first complains about issues he had from August 2022 through October 2022 with using the OCC library. Plaintiff complains that he was required to always request a pass when using the law library. Plaintiff was permitted to use the circulation library with permission from Unit Manager Nicholas and OCC librarian Jane Skinner ("Skinner") on August 17, 2022. Soon after though, on August 23, 2022, Skinner had staff remove Plaintiff from the circulation library and issued Plaintiff a misconduct report. Freese then gave Plaintiff a warden-level directive to stay out of the library without a pass, and Plaintiff did not enter the library without a pass since that time. In September 2022, Plaintiff attempted to submit a request for time to use the legal library services to Skinner, but Skinner informed Plaintiff that he must submit his requests for library time "to other people, nothing else." Filing No. 23 at 5. In October 2022, after hearing that a legal aide had been allowed to go to work release, Plaintiff requested to apply for the legal aide position. On October 28, 2022, "Skinner wrote a misconduct report stating that 'Mr. Robinson had disobeyed a directive to not have any contact with her at all' by writing the request expressing his interest in [the legal aide] job." *Id.* at 6. As a result, Defendant

Davis and Case Manager Espinoza punished Plaintiff with five days of room restriction rather than "dismissing such a frivolous misconduct report." *Id*.

Plaintiff next complains about two incidents in August and September 2022. First, on August 10, 2022, Plaintiff alleges Freese placed Plaintiff in a holding cell of the Restrictive Housing Unit ("RHU") "for the full four hours allowed for no apparent reason" and without a misconduct report. *Id*. at 3. While in the holding cell, Lt. Lemken denied Plaintiff's request to be moved due to loud noise from nearby maintenance and denied his request to see medical "just because someone felt dizzy." *Id*. at 4. A nurse did come later and take Plaintiff's vitals, which were normal, and decided Plaintiff might be dehydrated but no water was provided to Plaintiff until an hour later when Plaintiff asked to use the restroom and was able to drink from the faucet. *Id*. The second incident occurred on September 17, 2022, when Plaintiff was assaulted by his cellmate David Robison. Plaintiff alleges the assault occurred "after speaking to unit staff several times about the issues between him and David Robison." *Id*. at 8.

Most of Plaintiff's remaining allegations concern the time frame from November 16, 2022 to approximately December 11, 2022. On November 16, 2022, Plaintiff, "upset with everything the staff of this institution, Omaha Correction Center (OCC), were doing to him, . . . was involved in an incident that put him in the Restrictive Housing Unit." *Id*. at 6. In a Step Two Grievance dated November 17, 2022, Plaintiff wrote, "On 11/16/2022, I was assaulted by staff at the [OCC]. I have been placed in RHU. These staff provoked me and were retaliating for comments they overheard me saying to other inmates." *Id*. at 71. Upon his placement in the RHU, Plaintiff "initiated a hunger strike." *Id*. at 6. After medical staff and mental health staff were informed, and after Plaintiff filled out a "Do not

Resuscitate/Do not intubate order" (hereinafter "DNR order"), Plaintiff was placed on "Plan A protocol" on November 22, 2022, in which Plaintiff was stripped of all clothing and allowed only a pair of paper boxers; allowed two safety blankets and no pillow or mattress pad; and was placed in the "medical observation" room where he was "watched by Cpl. Level staff only, no medical staff observe the inmate." *Id.*  The medical observation room contained "a stainless steel toilet and sink, no shower facilities, [a loud] exhaust fan . . . , a nightlight that is never turned off, the cold water to the sink was turned off," and "the only options for sleeping were a steel plate 18" off the floor with no safety rails or on the concrete floor." *Id.* at 6–7.  Plaintiff was not permitted any cleaning supplies or personal hygiene products, nor was Plaintiff "allowed to use his C-PAP machine until someone from the central office of NDCS called and directed OCC to provide that to him." *Id.* at 7; *see also Id.* at 54.  Plaintiff "endured this treatment" from November 22, 2022 to November 24, 2022.  *Id.* at 7.  Plaintiff also discontinued his hunger strike on November 22, 2022, because "he received some good news in the legal mail," though he was only allowed to look at his legal mail because no paper, books, magazines, or mail could be kept in the "torture chamber." *Id.*

On November 29, 2022, an Institutional Disciplinary Committee ("IDC") hearing was held regarding the events of November 16, 2022, and five of the seven charges against Plaintiff were dismissed, including the most serious charge of assault.  However, Plaintiff remained in the RHU, and Defendant Weese told Plaintiff that he would "remain in RHU as a second reclassification action was being initiated and that pending transfer out of the facility you (the Plaintiff) will remain in RHU to ensure the safety of the facility." *Id.* at 7–8; *see also Id.* at 81; Filing No. 23-1 at 27.  Plaintiff also remained in the RHU

after another IDC hearing was held on December 6, 2022, to decide nine pending misconduct charges, where "all but a handful of minor charges were dismissed."  Filing No. 23 at 8.

Due to his placement in the RHU since November 16, 2022, Plaintiff complains that he was only allowed one hour of legal library services; he was not allowed envelopes and legal pads from his personal property because the items were not considered legal materials at OCC; he only was able to purchase five envelopes from the commissary; and he was only allowed fifteen minutes of phone time for personal calls and thirty minutes for legal calls per week.  *Id.* at 9.

Additionally, throughout this November to December 2022 timeframe, Plaintiff was told he would be transferred to either the Tecumseh State Correctional Institution ("TSCI") or the RTC.  Plaintiff informed the "Intel department, the Warden, the Unit Administrator, Unit Managers, Case Managers, and numerous other staff that transfer to either of these facilities would put his safety in danger due to the reasons why he had to use protective custody from NSP,"[3] but "[t]he staff here does not seem to care."  *Id.* at 8.  In an Inmate Interview Request ("IIR") dated December 2, 2022 addressed to "Intel," Plaintiff reports that "a gang dropout that [he] roomed with at NSP" told Plaintiff that he should "not 'walk the yard' [at] TSCI or LCC (RTC) because there would likely be what he called an S.O.S. out on me . . . that means . . . a 'Smash On Sight' order to take [Plaintiff] out."  Filing No. 23-1 at 6.  On or about December 4, 2022, Plaintiff inquired about "the county jail program" which "allows inmates in NDCS to be housed in county jails that participate in the program" and asked to go to Buffalo County or Phelps County.  Filing No. 23 at 8.

---

[3] The Court understands "NSP" to mean the Nebraska State Penitentiary.

Defendant Lewien denied Plaintiff's request to go to Buffalo County.  *Id.*; *see also Id.* at 33; Filing No. 23-1 at 19.

On December 10, 2022, Plaintiff was placed on "restriction protocol," though he alleges "[t]he worst thing the Plaintiff did was insult a staff member."  Filing No. 23 at 16. Under the restriction protocol, all water was shut off in Plaintiff's cell, he was only allowed paper boxers to wear, he was not provided bedding material of any kind, no flushing toilet, no hygiene or cleaning products, no paper products, and the cell was a "severely cold temperature."  *Id.*  Plaintiff's medical devices—his C-PAP machine and prescription glasses—were also taken, and "[h]e was told he would be under these severe restrictions until he was compliant."  *Id.*  On December 11, 2022, after discovering materials a staff member left in his cell after having supposedly secured it, Plaintiff "fashioned a small rope and used that to try to commit suicide by asphyxiation."  *Id.*  Plaintiff "survived" and was transferred to the RTC in Lincoln, Nebraska.  *Id.*  After he arrived, Plaintiff was informed that someone at OCC had put him on "IS status," or "immediate segregation status," which means "wherever [Plaintiff] is transferred to, he is to be immediately segregated from general population because someone at OCC feels he is a threat to others for some reason."  *Id.* at 16–17.

Finally, Plaintiff asserts that "Curt Weese's admission that it was difficult to move the Plaintiff to another unit due to the facility being at capacity . . . is a direct result of Governor Pete Ricketts['] disastrous policies of being harsh on crime" and due "to State Legislators Julie Slama and Suzanne Geist spearheading the effort against any meaningful reform to help relieve the overcrowding conditions in the [NDCS]."  *Id.* at 12. Plaintiff claims "Governor Ricketts['] and Legislators Slama's and Geist's policies, poor

13

leadership, opposition, and all around lack of understanding have led to . . . an overcrowded system that is unsafe for the prisoners that are incarcerated in it," *Id.* at 13–14, and, along with the NACA, Cotton, and the Nebraska Parole Board members, "contributed to the overcrowding emergency in the [NDCS] by either 1) violating the Constitutional separation of powers and interfering with any kind [of] prison reform or 2) not doing their job to their best ability and fulfilling their duties described in statute and by their oaths of office," Filing No. 29 at 1–2.

For relief, Plaintiff seeks $7.5 billion in "exemplary punitive damages" and asks the Court to order an investigation of NDCS and OCC staff for possible criminal behavior and "an investigation into the illegal policies that violate Title 68, Constitutional Rights, and Statutes." Filing No. 23 at 14–15, 17.

## V.  DISCUSSION

### A.  Claims from Original Complaint

As mentioned above, the Court considers the Amended Complaint as supplemental to the original Complaint based on Plaintiff's request to incorporate the timeline of events from his original Complaint into his Amended Complaint and "to use any of the previous filing in the future if allowed to continue." Filing No. 23 at 2. For purposes of this initial review, the Court assumes that Plaintiff intends to reassert all § 1983 claims in the Complaint and will examine those claims in light of the additional allegations contained in the Amended Complaint.[4]

---

[4] To the extent Plaintiff reasserts his claim regarding his cellmates' theft of Plaintiff's property, Plaintiff fails to state an actionable claim under 42 U.S.C. § 1983 for the reasons stated in the Initial Review Order. *See* Filing No. 11 at 11.

### 1. *Delay in Sleep Apnea Treatment*

First, Plaintiff alleged a deliberate-indifference-to-serious-medical-needs claim based on the delay in getting a sleep test and a C-PAP machine to treat his sleep apnea and that such delay caused him to be attacked by his cellmate, who was irritated by Plaintiff's snoring. *See* Filing No. 11 at 7. In the Initial Review Order, the Court concluded Plaintiff's Complaint failed to state a deliberate-indifference claim as there were no allegations "that the delay in treatment adversely affected his *medical prognosis*" or "that the Defendants deliberately disregarded Plaintiff's condition; rather, Plaintiff's allegations indicate that the Defendants successfully diagnosed and remedied Plaintiff's sleep apnea, albeit not as speedily as Plaintiff wished." *Id.* at 8 (emphasis in original). Plaintiff alleges nothing in the Amended Complaint regarding this claim that would remedy the defects identified in the Initial Review Order, and Plaintiff's deliberate-indifference claim related to the treatment of his sleep apnea is, therefore, dismissed with prejudice.

### 2. *Delay in Moving Plaintiff*

Next, Plaintiff complained that it took five months (from November or December 2021 to April 11, 2022) for the OCC staff to move him to another cell after Plaintiff complained both verbally and in writing to Defendants Van Lengen, Klippert, and Weese that his cellmates were becoming agitated and threatening due to Plaintiff's snoring. *See Id.* at 9. The Court determined that Plaintiff could proceed under the Eighth Amendment on this claim if he sued Van Lengen, Klippert, and Weese "in their individual capacities in an amended complaint, and assuming that such Defendants are alleged to have had some power over Plaintiff's cell assignment," because, liberally construed, "Plaintiff alleges that his cellmates threatened him, he alerted Defendants Van[ L]engen, Klippert,

15

and Wees[e] of the potential danger, his cellmates carried through with their threats by assaulting him, and it took several months before Plaintiff was moved to a different cell." *Id*. at 9–10.  In the Amended Complaint, Plaintiff specified that he is suing Van Lengen, Klippert, and Weese in their individual capacities.  Filing No. 23 at 1.  Thus, for the reasons stated in the Initial Review Order, the Court finds the Complaint's and Amended Complaint's allegations, construed very liberally, are sufficient to state an Eighth Amendment claim against Van Lengen, Klippert, and Weese because they "allegedly knew that Plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable measures to abate it."  Filing No. 11 at 10 (citing *Walton v. Dawson*, 752 F.3d 1109, 1119–20 (8th Cir. 2014)).

Before this claim may proceed to service of process, however, Plaintiff will be given an opportunity to file a second amended complaint to allege sufficient facts in support of other potential claims identified below.

### 3. *Overcrowding Causing Risk to Plaintiff*

In his Complaint, Plaintiff complained that the State of Nebraska "created a dangerous situation by letting [the] prison system become overcrowded to the point that an inmate cannot be moved out of a situation because there is not a place for them to go" and incompatible cellmates must be placed in the same cell.  Filing No. 1 at 11; *see also* Filing No. 11 at 10.  In the Initial Review Order, the Court determined this claim could not proceed against the State of Nebraska as alleged, and "[t]o be successful in stating an Eighth Amendment claim . . . that overcrowding created a risk of danger to Plaintiff, he will need to allege—if he can truthfully do so—that the individual Defendants were personally involved in creating the overcrowding at the OCC, thereby causing a delay in

Plaintiff's move to another cell and the violence visited upon him by his incompatible cellmate." Filing No. 11 at 10–11.

Plaintiff's Amended Complaint reasserts his Eighth Amendment overcrowding risk claim against former Governor Ricketts, State Legislators Slama and Geist, the NACA, and the Nebraska Parole Board members.  Plaintiff claims Ricketts, Slama, and Geist adopted misguided policies and failed to enact meaningful reform, Filing No. 23 at 12, and, along with the NACA, Cotton, and the Nebraska Parole Board members, "contributed to the overcrowding emergency in the [NDCS] by either 1) violating the Constitutional separation of powers and interfering with any kind [of] prison reform or 2) not doing their job to their best ability and fulfilling their duties described in statute and by their oaths of office," Filing No. 29 at 1–2.  At best, Plaintiff's allegations suggest that these Defendants have a general knowledge of the overcrowding situation within the NDCS, but his allegations fail to show each individual Defendant's personal awareness of the overcrowding situation at OCC or that such overcrowding created an increased risk of assault to Plaintiff.  See Pool v. Missouri Dep't of Corr. & Hum. Res., 883 F.2d 640, 645 (8th Cir. 1989) (affirming dismissal of prisoner-plaintiff's claims against state governor where allegations failed to show governor personally aware of prisoner's housing situation and risks presented thereby).  Accordingly, Plaintiff's overcrowding claims against Ricketts, Slama, Geist, the NACA, Cotton, and the Nebraska Parole Board members are dismissed for failure to state a claim.[5]

---

[5] Plaintiff also appears to claim that the policies of Ricketts and these other State defendants "of being harsh on crime" have led to situations like Plaintiff's where "[a] citizen of the United States who actually did not break the law is in prison." Filing No. 23 at 14.  To the extent Plaintiff seeks damages related to his allegedly unlawful confinement, such relief is unavailable in a § 1983 action.  See Heck v. Humphrey, 512 U.S. 477, 486–87 (1994) (prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his conviction, continued imprisonment, or sentence unless the conviction or sentence is reversed, expunged, or called into question by issuance of a writ of habeas corpus).

**B. Access to Courts**

In his Amended Complaint, Plaintiff complains about issues he had accessing the OCC library, such as how he was required to always request a pass when using the law library, and how he received limited law library access and limited access to legal supplies while he was placed in the RHU.  To the extent Plaintiff challenges the restrictions on his library access with respect to pass requirements or restrictions on his contact with OCC librarian Skinner, the Court will dismiss such claims as duplicative of his claims asserted in Case No. 8:22CV398.  *See Kriz v. 12th Judicial Dist Bd of Mental Health of Box Butte Cty.*, No. 4:05 CV 3253, 2005 WL 2563040, at *1 (D. Neb. Oct. 11, 2005) ("plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant[s] at the same time." (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir.2000))); *see also Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 954 (8th Cir. 2001) ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time.").  Plaintiff will not be prejudiced by dismissal of these claims as Case No. 8:22CV398 remains pending and Plaintiff has until October 31, 2023 to file an amended complaint.  *See* Filing No. 16, Case No. 8:22CV398.

Liberally construed, Plaintiff may be asserting that OCC staff deprived him of his constitutional right to access the courts by limiting his law library access and failing to provide him legal supplies while in the RHU.  It is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To prevail on an access to courts claim, a prisoner must establish that he sustained "an actual injury." *Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001).  To demonstrate

"actual injury," the prisoner must show "'that a nonfrivolous legal claim had been frustrated or was being impeded.'"   *Id.* (quoting *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998)).   "[A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation."   *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (internal quotation marks omitted).

Here, Plaintiff alleges no facts to suggest that he was prevented from asserting a nonfrivolous, arguable, legal claim due to any actions by any of the named Defendants. On the contrary, the Court takes judicial notice that Plaintiff filed a petition for writ of habeas corpus in this Court on December 1, 2022, during the time he alleges he was housed in the RHU.   *See Robinson v. Boyd*, 8:22-cv-00412-JFB-PRSE (D. Neb.) (Filing No. 1).   Accordingly, the Court will dismiss Plaintiff's claim for denial of access to the courts without prejudice for failure to state a claim upon which relief may be granted.

## C.  Deliberate Indifference Claims against OCC Defendants

Plaintiff expressly alleges the following claim for relief in the Amended Complaint against the following OCC defendants based on their alleged deliberate indifference:

> The Plaintiff claims that defendants Lewien, Weese, Davis, Klippert, Van Langen, Freese, Larson, Bennett, Reynolds, [OCC Medical Staff], and [OCC Mental Health Staff][6] were deliberately indifferent by allowing the Plaintiff to be exposed to harm, assault, abuse and torture and not doing anything to help him or prevent this from happening.  The Plaintiff gave every opportunity to these people and they did nothing until after the fact and events took place.  The Plaintiff alleges that instead being "proactive," these people were "reactive" and could be considered negligent in not carrying out the constitutional and statutory duty to protect inmates from harm.  The medical staff and mental health professionals use torture as a

---

[6] Plaintiff refers to "medical staff on duty from 11/22/2022 to 11/24/2022" twice when listing the defendants to this claim.  Filing No. 23 at 11.  However, because Plaintiff refers later in the statement of his claim to "mental health professionals," *Id.*, the Court assumes Plaintiff intended to assert this claim against the OCC Mental Health Staff.

means to coerce an inmate to be compliant, they hide behind the excuse that they were only trying to keep me (the Plaintiff) safe.  They have a duty to do no harm.  Not prisoners of war are to be subjected to torture according to the Geneva Convent.

Filing No. 23 at 11 (unedited).  Liberally construing Plaintiff's claim in conjunction with the factual allegations from his timeline of events, Plaintiff appears to assert claims against these OCC defendants based on (1) the assault by his cellmate, (2) the decision to transfer him to a different facility, (3) his four-hour placement in an RHU holding cell and in the RHU in general, and (4) his confinement in the medical observation room on "Plan A protocol" from November 22–24, 2022.

### 1.  Assault by Cellmate Robison

Liberally construed, Plaintiff alleges that OCC staff failed to protect him from an assault by his cellmate, David Robison, on September 17, 2022.  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  However, prison officials do not incur constitutional liability for every injury suffered by a prisoner.  *Id.* at 834.  In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings.  First, the inmate must demonstrate that he or she is "'incarcerated under conditions posing a substantial risk of serious harm.'"  *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer*, 511 U.S. at 834).  The second requirement concerns the state of mind of the prison official who is being sued.  *Id.*  It mandates that the inmate show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."  *Id.* (internal quotation omitted).  This subjective requirement is necessary because "only the

unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (internal quotation omitted).

Here, Plaintiff alleges he was assaulted by his cellmate but does not allege any facts to suggest that the conditions under which he was confined with his cellmate subjected him to a risk of serious harm. Moreover, Plaintiff does not allege any facts to show that any of the named Defendants knew of and disregarded a risk to Plaintiff's health or safety. Plaintiff only alleges that the assault occurred after he spoke to unnamed "unit staff several times about the issues between him and David Robison." Filing No. 23 at 8. As drafted, the Amended Complaint's allegations are insufficient to state an Eighth Amendment claim for failure to protect against any named Defendant. On the Court's own motion, Plaintiff shall be given leave to file a second amended complaint that states a plausible failure-to-protect claim based on the September 17, 2022 assault by his cellmate, David Robison, against a named defendant in his or her individual capacity.

### 2. Transfer to a Different Facility

Plaintiff complains that OCC staff ignored his reports that if he was transferred to the TSCI or the RTC, his safety would be at risk. Filing No. 23 at 8. Plaintiff further complains that Defendant Lewien denied his request to be placed at the Buffalo County Jail. *Id.*; *see also Id.* at 33; Filing No. 23-1 at 19.

"Transfer within the prison, or to another prison, is within the discretion of prison officials." *Baalim v. St. Louis City Just. Ctr.*, No. 4:22-CV-359 NCC, 2022 WL 2237335, at *10 (E.D. Mo. June 22, 2022) (quoting *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (internal citations omitted)). While Plaintiff alleges transfer to a different facility posed a risk to his safety, his allegations of risk are vague and speculative at best. OCC

staff specifically noted Plaintiff's concerns, Filing No. 23-1 at 6, but Lewien specifically determined that Plaintiff's transfer was necessary to "maintain safety and security of this facility," *Id.* at 18. "Plaintiff has no constitutional right to choose where he is detained." *Baalim*, 2022 WL 2237335, at *10. As pleaded, the Amended Complaint's allegations do not rise to the level of deliberate indifference with respect to Plaintiff's transfer to a different facility and the denial of a placement of his choosing. The Court will dismiss this claim without prejudice for failure to state a claim upon which relief may be granted.

### 3. Confinement in RHU Holding Cell and in the RHU

Liberally construed, Plaintiff complains that Freese's placement of Plaintiff in an RHU holding cell on August 10, 2022, for four hours without a misconduct report, as well as his general placement in the RHU from November 16, 2022 until his transfer in December 2022, violated his rights to due process and to be free from cruel and unusual punishment. *See* Filing No. 23 at 3, 7–9, 16.

A prisoner must demonstrate he has suffered "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" to establish a claim under the Fourteenth Amendment Due Process clause. *Ballinger v. Cedar Cty.*, 810 F.3d 557, 560 (8th Cir. 2016) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The Eighth Circuit has "consistently held that a demotion to [administrative] segregation, even without cause, is not itself an atypical and significant hardship." *Id.* at 562 (quoting *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010)).

The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and

22

must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  The Constitution "does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  In general, "[t]o establish a conditions of confinement claim, a plaintiff must demonstrate (1) that the alleged deprivation was 'objectively, sufficiently serious' to result in the 'denial of the minimal civilized measure of life's necessities,' and (2) that the prison official whose action or omission caused the deprivation behaved with 'deliberate indifference to inmate health or safety.'" *Hamner v. Burls*, 937 F.3d 1171, 1178 (8th Cir. 2019) (quoting *Farmer*, 511 U.S. at 834).

Even considering Plaintiff's allegations that he was exposed to loud noise, experienced a delay in being seen by a nurse, and was not provided water for over an hour, the Court finds Plaintiff has failed to state an actionable due process or Eighth Amendment claim with respect to his four-hour placement in the RHU holding cell. Similarly, Plaintiff alleges no facts to suggest that his confinement in the RHU in November and December 2022 constituted an atypical and significant hardship or deprived him of the minimal civilized measure of life's necessities.  *See Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (holding that thirty-seven days of punitive isolation did not violate the Eighth Amendment).  Accordingly, Plaintiff's claims for relief related to his confinement in the RHU will be dismissed.

### 4.  November 2022 Confinement on Plan A Protocol

Plaintiff also raises due process and Eighth Amendment claims against the OCC Medical Staff and the OCC Mental Health Staff based on Plaintiff's confinement in the medical observation room from November 22–24, 2022, on the "Plan A protocol."  Filing

23

No. 23 at 6–7, 9, 11.  After Plaintiff went on a hunger strike and signed the DNR order, OCC Medical and Mental Health Staff placed Plaintiff in the medical observation room where he was provided only a pair of paper boxers and two safety blankets, lacked hot water, access to shower facilities and personal hygiene items, and was exposed to constant fan noise and light from a nightlight.  Though Plaintiff likens the treatment he endured for two days to "torture," *Id.* at 7, Plaintiff's allegations do not rise to the level of a constitutional violation.

As explained above, only deprivations that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" violate the Fourteenth Amendment's Due Process Clause. *Sandin*, 515 U.S. at 484.  Even construed liberally, Plaintiff's allegations do not suggest an atypical and significant hardship. *Kennedy v. Blankenship*, 100 F.3d 640, 642–43 n.2 (8th Cir. 1996) (stating that punitive isolation is not an atypical and significant deprivation).

Nor do Plaintiff's allegations state a violation of the Eighth Amendment.  "Detention centers must provide pretrial detainees with 'reasonably adequate sanitation, personal hygiene, and laundry privileges[.]'" *Waller v. Rice*, No. 1:15-CV-01010, 2018 WL 1092346, at *5 (W.D. Ark. Feb. 27, 2018) (quoting *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012)).  In addition, as stated above, the Eighth Amendment prohibits punishments that deprive prisoners of the minimal civilized measure of life's necessities. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).  The lack of hot water and access to shower facilities for the two days Plaintiff was confined in the medical observation cell did not constitute an excessive risk to Plaintiff's health and safety or a violation of the Eighth Amendment.  *Waller*, 2018 WL 1092346, at *6 (Plaintiff's confinement in medical

24

observation cell for ten days without hot water or shower privileges did not violate Eighth Amendment).  The Court also concludes that the other uncomfortable conditions of confinement experienced by Plaintiff in the medical observation cell do not rise to the level of a constitutional violation, particularly where Plaintiff does not allege he suffered any injury as a result.  *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (a prisoner must suffer some actual injury in order to receive compensation for an Eighth Amendment claim).

Accordingly, Plaintiff's claims based on his November 2022 confinement in the medical observation cell will be dismissed without prejudice and without leave to amend.

## D.  December 2022 Confinement on Restriction Protocol

Plaintiff seeks to assert claims against "Cpl. Karas, Sgt. Black, Lt. Hayes, Cpl. Vater, Cpl. Cass, and others whose names are not known" who were working on December 10-11, 2022, when Plaintiff was placed on "restriction protocol" after insulting a staff member.  Filing No. 23 at 16–17.  Though not clearly alleged, Plaintiff may be attempting to assert due process and Eighth Amendment claims against these defendants based on the conditions of his confinement under the restriction protocol and their failure to properly secure his cell and protect him from attempting suicide.

As currently pleaded, the Court finds that Plaintiff's allegations are insufficient to state due process and Eighth Amendment claims based on the conditions he experienced while on restriction protocol.  Plaintiff alleges he was only under the restriction protocol for two days, and while he alleges the water to his cell was shut off and he had no flushing toilet, he does not allege that he was denied drinking water as well.  *See Waller*, 2018 WL 1092346, at *6 ("Access to a sufficient quality and quantity of water for drinking and

basic personal hygiene is, of course, a minimal life necessity, but nothing in the Constitution requires that the water must be available on demand." (citing cases)). "Nothing in the Constitution requires that each prisoner be provided with clean, cold, warm, or any other form of running water in his cell." *Id.* (quoting *Jelinek v. Roth*, 33 F.3d 56, *2 (7th Cir. 1994) (unpublished)) (cleaned up); *see also Smith v. Copeland*, 892 F. Supp. 1218, 1230 (E.D. Mo. Apr. 25, 1995) (turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water or hygienic requirements") *aff'd*, 87 F.3d 265 (8th Cir. 1996). On its own motion, the Court will give Plaintiff leave to file a second amended complaint to allege plausible due process and Eighth Amendment claims regarding the conditions of confinement he experienced while on restriction protocol.

Liberally construed, Plaintiff alleges that Karas, Black, Hayes, Vater, Cass, and other OCC staff working on December 11–12, 2022 were deliberately indifferent to Plaintiff's serious medical needs when a staff member failed to properly secure his cell and Plaintiff attempted suicide using materials left by the staff member. Filing No. 23 at 16. "The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs, including the risk of suicide." *A.H. v. St. Louis Cnty., Missouri*, 891 F.3d 721, 726 (8th Cir. 2018) (internal quotation omitted). *See also Hawkins v. Cnty. of Lincoln*, 785 F. Supp. 2d 781, 785–86 (D. Neb. 2011) ("The Eighth Circuit has 'generally treated allegations that officials failed to prevent jail suicides as claims for failure to provide medical treatment.'" (quoting *Hott v. Hennepin County, Minn.*, 260 F.3d 901, 905 (8th Cir.2001))). "When evaluating an official's response to serious medical needs in terms of prisoner suicide, 'the analysis

focuses on the particular risk of suicide posed by the specific prisoner, rather than on the generalized threat of suicide among the general population of prisoners as a whole.'" *Hawkins*, 785 F. Supp. 2d at 786 (quoting *Hott*, 260 F.3d at 905).  Though Plaintiff alleges he was placed on restriction protocol for, at worst, insulting a staff member, Plaintiff's allegation that he signed a DNR and his statements in many of the IIRs submitted to OCC staff attached to the Amended Complaint suggest that Plaintiff presented a risk of self-harm.  *See* Filing No. 23 at 6; Filing No. 23-1 at 28–29, 34, 44.

Plaintiff has, thus, alleged a plausible Eighth Amendment claim for deliberate indifference to his serious medical needs related to his attempted suicide.  However, this claim cannot proceed as Plaintiff has alleged no facts demonstrating any individual Defendant's personal involvement in the alleged constitutional violation nor has he alleged facts from which it can be determined who the individual staff member was that allegedly failed to properly secure his cell.  Accordingly, the Court will give Plaintiff leave to file a second amended complaint to name individual defendants responsible for the alleged constitutional violation related to his attempted suicide and to allege facts showing each named defendant's personal involvement in the alleged violation.

### E.  IS Status Retaliation

Finally, Plaintiff alleges:

The persons responsible for the IS status from OCC are continuing to torture the Plaintiff even though he is not even there.  IS status can only be removed by these people from OCC or, after a lengthy investigation, an override order from the NDCS Central Office.  Until the IS status is removed, the Plaintiff cannot have any freedom of movement and is continued to be placed in Restrictive Housing at whichever facility he is located.  This, again, continues the torture he suffered at OCC and is nothing more that outrageous retaliation and retribution by the staff at OCC.

Filing No. 23 at 17.  Liberally construed, Plaintiff alleges that OCC staff retaliated against him in violation of the First Amendment by imposing immediate segregation status upon him.

To prevail on a § 1983 claim for retaliation in violation of the First Amendment, Plaintiff must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) there was a but-for causal connection between the official's retaliatory animus and Plaintiff's injury.  *Brandy v. City of St. Louis, Missouri*, 75 F.4th 908, 914–15 (8th Cir. 2023).  The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for the exercise of a constitutionally protected right.  *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013).  Further, "to prevail on a First Amendment retaliation claim, the plaintiff must show that the defendant would not have taken the adverse action but for harboring 'retaliatory animus' against the plaintiff because of his exercise of his First Amendment rights."  *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (quoting *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715, 1722 (2019)).

Here, Plaintiff includes allegations that he engaged in protected activities while confined at the OCC, including filing lawsuits and grievances.  *See Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907 (8th Cir. 2013) ("It is well established that the right to file a legal action is protected under the First Amendment.")*; Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)) ("A prisoner's right under the First Amendment to petition for redress of grievances under a prison's grievance procedures is clearly established in this [circuit].").  However, Plaintiff

has failed to allege facts to suggest that the imposition of the IS status is related to his filing of grievances or lawsuits.   Rather, the facts alleged in the Amended Complaint suggest the IS status was imposed due to Plaintiff's behavior of self-harm, misconduct, and/or safety and security concerns.   Regardless, Plaintiff has not alleged any facts showing that any of the named Defendants were personally involved in the alleged retaliatory decision to impose IS status upon Plaintiff.   On its own motion, the Court will give Plaintiff leave to file a second amended complaint to allege facts in support of a causal link between his protected activity and his IS status and facts showing that a named, individual Defendant was personally involved in the alleged retaliation.

## VI.  OTHER PENDING MOTIONS

Plaintiff filed four Motions for Status, inquiring about the status of this matter.  Filing No. 28; Filing No. 30; Filing No. 31; Filing No. 36.  Upon consideration, Plaintiff's motions are granted, and this Memorandum and Order serves to advise Plaintiff of the status of this matter.  The Court has reviewed Plaintiff's Amended Complaint and determined that further amendment is required before this matter may proceed as set forth herein.

Plaintiff also filed what the Court docketed as a Motion for Review in this case and four other cases filed by Plaintiff.  Filing No. 33.  Plaintiff asks the Court to "do a quick review of all of the cases I have filed and get it done with." *Id.*  As the Court has now reviewed Plaintiff's Amended Complaint, this motion will be denied as moot.

## VII.  CONCLUSION

Upon review, the Court finds Plaintiff has alleged a plausible Eighth Amendment claim against Defendants Van Lengen, Klippert, and Weese in their individual capacities for failing to protect him from harm due to the delay in moving him to a different cell.

29

However, the Court cautions Plaintiff that this is only a preliminary determination based on the allegations found within the Complaint and Amended Complaint.  This is not a determination of the merits of Plaintiff's claims or potential defenses thereto.  Moreover, this matter will not proceed to service of process until Plaintiff has an opportunity to file a second amended complaint to allege plausible claims for relief against specific, named defendants with respect to the following claims: (1) a failure-to-protect claim based on the September 17, 2022 assault by his cellmate, David Robison; (2) due process and Eighth Amendment claims regarding his December 2022 restriction protocol conditions of confinement; (3) an Eighth Amendment claim for deliberate indifference to his serious medical needs related to his attempted suicide; and (4) a First Amendment retaliation claim based on the imposition of IS status.

If Plaintiff chooses to file a second amended complaint, he is advised that **the Court will no longer permit the piecemeal filing of supplemental materials in this case**.  Plaintiff's repeated filing of supplementary materials frustrated the Court's ability to discern and review the claims Plaintiff seeks to raise in this matter.  It is true that complaints filed by pro se litigants are held to less stringent standards than those applied to formal pleadings drafted by lawyers; however, even pro se litigants must comply with the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 8 requires that every complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation . . . be simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), (d)(1).  A complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

Accordingly, if Plaintiff decides to file a second amended complaint, Plaintiff must include all of the claims he wishes to, and has been given leave to, pursue against all of the defendants he wishes to proceed against **in one document**.  To that end, Plaintiff is encouraged to use the enclosed court-approved form to draft his second amended complaint, which the Clerk of the Court will provide to him.  The second amended complaint must identify each defendant by name, must specify that each defendant is sued in his or her individual capacity, and must set forth all of Plaintiff's claims (and any supporting factual allegations) against that defendant.  Plaintiff should be mindful to explain what each defendant did to him, when the defendant did it, how the defendant's actions harmed him, and what specific legal right Plaintiff believes the defendant violated.

To be clear, if Plaintiff chooses to file a second amended complaint, then he must restate all relevant allegations from his Complaint, Filing No. 1; Filing No. 8, and Amended Complaint, Filing No. 23, regarding (1) his Eighth Amendment claim against Van Lengen, Klippert, and Weese related to the delay in moving him to a different cell due to the threats from his cellmates caused by Plaintiff's snoring; (2) his failure-to-protect claim based on the September 17, 2022 assault by his cellmate, David Robison; (3) his due process and Eighth Amendment conditions-of-confinement claims related to his December 2022 placement on restriction protocol; (4) his Eighth Amendment claim for deliberate indifference to his serious medical needs related to his attempted suicide; and (5) his First Amendment retaliation claim based on the imposition of IS status.  Plaintiff may not incorporate any allegations related to those claims by referring to his prior pleadings.[7]  If

---

[7] To the extent Plaintiff may rely on any of the IIRs, grievances, or other documents attached to his prior pleadings, Plaintiff need not resubmit such documents as the Court recognizes Plaintiff may not be able to do so if the documents submitted were his only copies.  Instead, Plaintiff may incorporate the attachments by reference in his Second Amended Complaint.

Plaintiff requires copies of his Complaint and Amended Complaint in order to draft his second amended complaint, he may contact the Clerk's office to determine the proper method of requesting and paying for those copies.

If Plaintiff chooses not to file a second amended complaint in accordance with this Memorandum and Order, then this matter will proceed to service of process only on Plaintiff's Eighth Amendment failure-to-protect claim against Van Lengen, Klippert, and Weese on the existing pleadings, and all other remaining claims will be dismissed. The Court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915A after he addresses the matters set forth in this Memorandum and Order.

IT IS THEREFORE ORDERED that:

1.  The following claims and defendants will be dismissed as follows:

    a.  Plaintiff's claims regarding his cellmates' theft of Plaintiff's property are dismissed for the reasons stated in the Initial Review Order, Filing No. 11 at 11.

    b.  Plaintiff's deliberate-indifference claim based on the delay in treatment of his sleep apnea is dismissed with prejudice.

    c.  Plaintiff's overcrowding claims against Defendants Ricketts, Slama, Geist, the NACA, Cotton, and the Nebraska Parole Board are dismissed without prejudice and without leave to amend for failure to state a claim.

    d.  Plaintiff's claims regarding restrictions on his access to the OCC library are dismissed without prejudice and without leave to amend as duplicative of claims raised in Case No. 8:22CV398.

e.     Plaintiff's claim for denial of access to the courts is dismissed without prejudice and without leave to amend for failure to state a claim.

f.     Plaintiff's deliberate-indifference claim regarding his transfer to a different facility and the denial of his preferred placement is dismissed without prejudice and without leave to amend for failure to state a claim.

g.     Plaintiff's due process and Eighth Amendment claims regarding his confinement in the RHU are dismissed without prejudice and without leave to amend for failure to state a claim.

h.     Plaintiff's due process and Eighth Amendment claims based on his November 2022 confinement in the medical observation cell will be dismissed without prejudice and without leave to amend for failure to state a claim.

2.     The following claims will proceed further as follows:

a.     For purposes of initial review, Plaintiff has stated a plausible Eighth Amendment claim for relief against Defendants Van Lengen, Klippert, and Weese in their individual capacities based on the delay in moving Plaintiff after Plaintiff was threatened and attacked by his cellmates.

b.     Plaintiff is given leave to file a second amended complaint that states a plausible failure-to-protect claim based on the September 17, 2022 assault by his cellmate, David Robison, against a named defendant in his or her individual capacity.

33

    c.      Plaintiff is given leave to file a second amended complaint that states a plausible claim for relief regarding his conditions of confinement while on restriction protocol from December 10–11, 2022.

    d.      For purposes of initial review, Plaintiff has alleged a plausible Eighth Amendment deliberate-indifference claim related to his attempted suicide, and Plaintiff is given leave to file a second amended complaint to allege this claim against named individual defendants in their individual capacities and to allege facts showing each named defendant's personal involvement in the alleged violation.

    e.      Plaintiff is given leave to file a second amended complaint that states a plausible First Amendment retaliation claim regarding the imposition of his IS status against a specific, named defendant or defendants in their individual capacity.

3.      Plaintiff shall have until **October 11, 2023**, to file a second amended complaint in accordance with this Memorandum and Order.  Failure to file an amended complaint within the time specified by the Court will result in this matter proceeding to service of process against Defendants Van Lengen, Klippert, and Weese only as set forth herein and dismissal of all other remaining claims.  **If Plaintiff decides to file a second amended complaint, Plaintiff must include all of the claims he wishes to, and has been given leave to, pursue against all of the defendants he wishes to proceed against in the amended complaint.  Plaintiff should be mindful to specify that each defendant is sued in his or her individual capacity and to explain what each**

**defendant did to him, when the defendant did it, and how the defendant's actions harmed him.**

4.    In the event that Plaintiff files a second amended complaint, Plaintiff shall restate the allegations of the Complaint, Filing No. 1; Filing No. 8, the Amended Complaint, Filing No. 23, and any new allegations.  Failure to consolidate all claims into one document may result in the abandonment of claims.  **Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.**

5.    Plaintiff's motion to add defendants, Filing No. 22, motion to amend, Filing No. 29, and motions for status, Filing No. 28; Filing No. 30; Filing No. 31; Filing No. 36, are granted in accordance with this Memorandum and Order.

6.    Plaintiff's other pending motions, Filing No. 25; Filing No. 32; Filing No. 33, are denied for the reasons stated in this Memorandum and Order.

7.    The Clerk of Court is directed to update the caption as follows:

a.    Amend the name of Defendant "Russell Vanlengen" to "Case Manager Russell Van Langen."

b.    Add "Unit Administrator Curt Weese," "Cpl. Sara Karas," "Sgt. Black," "Lt. Hayes," "Cpl. Vater," "Cpl. Cass," "Nebraska Association of County Attorneys," "Rosylyn Cotton," and "Nebraska Parole Board" as Defendants.

c.    Remove Defendants Pete Ricketts, Julie Slama, Suzanne Geist, Nebraska Association of County Attorneys, Rosylyn Cotton, and Nebraska Parole Board as parties to this action.

8.     The Clerk of Court is direct to send to Plaintiff the Form Pro Se 14 "Complaint for Violation of Civil Rights (Prisoner)."

9.     The Clerk of Court is directed to set a pro se case management deadline using the following text: **October 11, 2023**: check for second amended complaint.

10.    Plaintiff shall keep the Court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal without further notice.


Dated this 11th day of September, 2023.


BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge